## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JOHN AND JANE DOE,**

      **Plaintiffs,**

    **v.**

**SPRINGBORO COMMUNITY
CITY SCHOOL DISTRICT BOARD
OF EDUCATION, et al.,**

      **Defendants.**

**Case No. 1:21-cv-623**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

The allegations in this case are disturbing, to say the least. Plaintiffs, parents of a female first-grade student who attended Clearcreek Elementary School during the 2018–2019 school year, allege that one of the defendants, physical education teacher John Austin Hopkins, engaged in sexual contact with their child (Child Victim), a student in his class, during his physical education classes. (First Am. Compl., Doc. 34, #203–04). The parents, who proceed under Doe pseudonyms to preserve their daughter's privacy, sued Hopkins and school administration officials, raising claims under federal and state law. Hopkins moves to dismiss, arguing that the parents' allegations are conclusory and insufficient to plausibly allege their claims. (*See generally* Doc. 37). For the reasons discussed below, the Court **DENIES** Hopkins's motion.

## BACKGROUND

The parents allege[1] that Hopkins began working for Clearcreek Elementary during the 2018-2019 school year as a physical education teacher. (Doc. 34, #203). Despite the school's using a hiring committee to fill the position, Hopkins was allegedly hired irrespective of his qualifications after Defendant Daniel Schroer, superintendent at the time, directed the committee to hire him without any background investigation. (*Id.*). During his first school year, with the knowledge of school administration, Hopkins kept the door to the gymnasium locked during his classes, preventing any other adult from spontaneously walking in. (*Id.*). He even installed a doorbell on the exterior of the gymnasium door so that he would be alerted any time school personnel wanted to access the gymnasium. (*Id.* at #204).

It was during these classes that Hopkins, according to the parents, engaged in "sexual contact," as that term is defined in Ohio Revised Code § 2907.01(B), with Child Victim. (*Id.* at #204). That statute defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Ohio Rev. Code § 2907.01(B). And this allegation is not mere conjecture. The parents state that on June 17, 2019, Hopkins was criminally indicted on 36 counts of gross sexual imposition for the same conduct (Doc. 34, #205), although they do not specifically allege whether any of the counts

---

[1] As this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

were based on contact with Child Victim. That case eventually went to trial, where Hopkins was found guilty on 34 counts and was sentenced to an aggregate prison term of 96 months. (*Id.*); *Ohio v. Hopkins*, No. 19CR35620 (Warren Cnty. Ct. Common Pleas June 10, 2020).[2] In other words, the jury concluded that the state had proven, beyond a reasonable doubt, that the activity alleged in those 34 counts occurred, and the judge concluded that the conduct was sufficiently serious that a term of 96 months incarceration was appropriate.

After Hopkins's conduct came to light, Child Victim's parents sued: the Springboro Board of Education (the Board); the Clearcreek Elementary superintendent and the Clearcreek Elementary school principal, (together with the Board, School Administration Defendants); and Hopkins. (Doc. 34, #201–02). They bring eight substantive claims[3]: (1) a claim under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq. (against the School Administration Defendants); (2) a Fourteenth Amendment substantive due process claim, via 42 U.S.C. § 1983 (against all Defendants); (3) a negligent hiring and supervision claim (against the School Administration Defendants); (4) a claim under Ohio's mandatory reporting statute, Ohio Rev. Code § 2151.421 (against the principal only); (5) a civil battery claim under Ohio law (against Hopkins); (6) a civil assault claim under Ohio law (against Hopkins); (7) a civil penalty claim under Ohio law stemming from

---

[2] The Court takes judicial notice of Hopkins's criminal conviction and sentence. The documents for that criminal case are not accessible online, so the Court procured copies directly from the clerk of the Warren County Court of Common Pleas.

[3] The ninth claim, which seeks injunctive relief against the school district, is not a standalone claim but a form of relief. (Doc. 34, #215).

3

Hopkins's criminal convictions (against Hopkins); and (8) an intentional infliction of emotional distress claim under Ohio law (against Hopkins). (*Id.* at #205–14).

The School Administration Defendants filed an answer to the parents' Complaint. (Doc. 35). Hopkins, rather than answering, moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) the five claims asserted against him, arguing that the parents fail to allege specific non-conclusory facts from which this Court could reasonably infer that he is liable. (*See generally* Doc. 37). The parents responded, (Doc. 39), Hopkins replied, (Doc. 41), and the motion is now ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable." *Id.* At the motion-to-dismiss stage, the Court accepts the facts of the complaint as true. *Id.* But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitation[s] of the elements of a cause of action." *Id.* (cleaned up).

## LAW AND ANALYSIS

Hopkins maintains that the parents' Complaint is full of vague and threadbare allegations and thus fails to state a claim for relief. (Doc. 37, #238). While the Court agrees the Complaint is short on details, the Court nonetheless finds the parents' claims plausible enough to proceed to discovery.

Before evaluating the plausibility of the parents' claims, the Court notes that some are not asserted against Hopkins. As noted above, the Title IX claim, the negligent-hiring claim, and the failure-to-report claim were brought against only the School Administration Defendants. Those defendants have answered the Complaint but have not moved to dismiss, which means that only the claims against Hopkins are relevant here. The current claims against Hopkins include (1) an individual and official-capacity Fourteenth Amendment substantive due process claim, (2) a civil battery claim, (3) a civil assault claim, (4) a claim for civil penalties against Hopkins based on his criminal liability, and (5) an intentional infliction of emotional distress claim.

### A.    Fourteenth Amendment Claim

Before addressing the plausibility of Plaintiffs' Fourteenth Amendment claim, the Court must first address a sovereign immunity issue that Hopkins raises. Individual-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), so they don't generally raise sovereign-immunity concerns. But official-capacity suits are in effect "against an entity of which an officer is an agent." *Id.*

(quotation marks and citation omitted). In this case, then, an official-capacity suit against Hopkins is in effect a suit against the school district for which he worked. Hopkins claims this presents a problem because, in his view, a suit against the school district would be barred by the Eleventh Amendment. (Doc. 37, #242–43). But the Eleventh Amendment extends only to entities rightly considered arms of the state. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977). And in Ohio, school districts are not arms of the state and therefore do not enjoy Eleventh Amendment immunity. *Id.*; Ohio Rev. Code §§ 2743.01 ("'State' does not include political subdivisions … 'Political subdivisions' [includes] … school districts, and all other bodies corporate and political responsible for government activities only in geographic areas smaller than that of the state to which [] sovereign immunity … attaches."), 3313.17 (providing that the board of education of each school district "shall be a body politic and corporate … capable of suing and being sued …"). So the Court sees no reason to dismiss the official-capacity claim on this ground.

As to the claim's plausibility, to allege a plausible claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) she was "deprived of a right secured by the Constitution," and (2) "such deprivation occurred under color of state law." *Doe v. Claiborne Cnty., ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 511 (6th Cir. 1996). As a public-school teacher, Hopkins does not argue that he was not acting under color of state law. Rather, he disputes that the parents have plausibly alleged that he deprived the Child Victim of a right secured by the Constitution.

"It is undisputed that the Due Process Clause of the Fourteenth Amendment protects the right of a child to be free from sexual abuse inflicted by a public school employee or teacher." *Doe v. Warren Consol. Schs*, 93 F. App'x 812, 818 (6th Cir. 2004). Furthermore, "sexual abuse under color of law is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause." *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 438 (6th Cir. 2002) (cleaned up). When evaluating whether a defendant's "sexual abuse" violates the Due Process Clause, the Court asks whether the abuse of power effectuated by the official is so offensive and indefensible as to "shock[] the conscience" of the Court. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996).

In *Lillard*, the court applied the "shocks the conscience" standard when evaluating whether a teacher who rubbed a student's stomach and made a suggestive comment violated the Due Process Clause. *Id.* at 726. The court held that while the teacher's conduct was "wholly inappropriate," it did not shock the conscience. *Id.* The court specifically noted that the teacher's conduct amounted to a "single, isolated incident." *Id.*

Contrast *Lillard* with *Doe v. Claiborne County*. In the latter case, the teacher, who doubled as the basketball coach, abused a 14-year-old female student who was a scorekeeper for the basketball team. 103 F.3d at 500–01. The teacher fondled her breasts, called her at home, and eventually engaged in sexual intercourse with her.

7

*Id.* at 501. The court held that the student's right to bodily integrity, including her right to be free from the sexual abuse of a teacher, was violated by the teacher's actions. *Id.* at 507.

Perhaps the most relevant sexual abuse case is *Doe v. Warren Consolidated Schools*. In that case, the teacher sexually molested several female students at the school where he taught. 93 F. App'x at 814. The court did not specify what actions constituted molestation but noted that the teacher had pleaded no contest to charges of Fourth Degree Criminal Sexual Conduct, a misdemeanor in Michigan. *Id.* That statute can be violated in many ways, one of which is sexual contact between a public-school teacher and student. Mich. Penal Code § 750.520e. "Sexual contact," under that Michigan statute, was defined as:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner[.]

Mich. Penal Code § 750.520a. The *Warren Consolidated Schools* court, relying on *Claiborne County*, denied qualified immunity to one of the school administrators responsible for the teacher's placement which, necessarily, meant that the teacher's actions violated the Constitution. *Warren Consol. Schs.*, 93 F. App'x at 821–23.

Applying *Warren Consolidated Schools* here, the Court finds that the parents plausibly allege a constitutional violation. The Complaint's allegation that Hopkins engaged in "sexual contact" as defined in Ohio Revised Code § 2907.01(B) is certainly light on details and, absent more, would perhaps constitute the kind of bare legal

8

conclusion that receives no weight under the *Iqbal/Twombly* framework. But here there is more—a jury of Hopkins's peers determined that he committed the elements of that crime at least as to some of Child Victim's classmates. Given the jury's factual determination in the related criminal matter, the allegation here is not a bare legal conclusion. Rather, the Court must reasonably infer from the Complaint, as a matter of fact, that Hopkins touched the erogenous zone of school-aged girls for the purpose of sexual gratification. Ohio Rev. Code § 2907.01(B). That makes Hopkins's conduct here virtually indistinguishable from the teacher's conduct in *Warren Consolidated Schools*, both as to level of specificity and the severity of the conduct. Thus, the Court finds that the parents have plausibly alleged that Hopkins violated the constitutional rights of his students.

Hopkins resists this conclusion, arguing that he is entitled to qualified immunity, which means that the parents must describe Hopkins's conduct "with particularity." (Doc. 37, #243 (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016))). And because the parents do not particularly allege what Hopkins did to his students, Hopkins argues he is entitled to a dismissal of the claims on qualified immunity grounds. (*Id.* at #242).

Two thoughts. First, the Court notes that the Sixth Circuit has held that qualified immunity disputes are "more appropriately dealt with at the summary-judgment stage or at trial," rather than at the motion-to-dismiss stage. *Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017) (collecting cases); *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). That is because qualified immunity, an immunity

that often turns on the specific facts of each case, is difficult to adjudicate before discovery. *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring).

Second, even assuming the doctrine applies at this stage, it does not impose any "heightened pleading requirement." *Courtright*, 839 F.3d at 518 (cleaned up). Plaintiffs need only plausibly allege a violation of a clearly established constitutional right. *Id.* And when determining whether plaintiffs have done so, the Court still must "draw all reasonable inferences in favor of the plaintiff." *Id.*

As illustrated by the discussion of *Doe v. Warren Consolidated Schools* above, the parents have plausibly alleged the violation of a clearly established constitutional right. *Warren Consolidated Schools* clearly establishes that criminal sexual molestation, in the form of touching young students in intimate areas for the purpose of sexual gratification, violates the Constitution. 93 F. App'x at 814 ("In criminal proceedings, [the teacher] pleaded no contest to charges of Fourth Degree Criminal Sexual Conduct, in violation of Michigan law[.]"), 818 (holding that the teacher's conduct violates the Constitution). The parents allege that Hopkins engaged in "sexual contact" with the victims, as defined in Ohio Revised Code § 2907.01(B). (Doc. 34, #204). The term is statutorily defined as touching the "erogenous zone" of another for the purpose of sexual gratification. Even if the statute is ambiguous and could cover conduct not as egregious as the conduct in *Doe*, the Court must draw any reasonable inferences in favor of the parents. The Court finds that it is reasonable to infer, especially given that Hopkins is serving an eight-year sentence for criminally

10

touching school-aged girls, that his conduct falls on the clearly established side of the *Warren Consolidated Schools* line.

All in all, the parents have plausibly alleged that Hopkins violated a clearly established constitutional right, so the Court will allow this claim to go forward.

## B. Civil Assault and Battery

The Court considers the civil battery and civil assault claim together. The parents allege that Hopkins committed two Ohio torts—assault and battery—when he touched his students. Civil assault under Ohio law is the "intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact." *Hopkins v. Columbus Bd. of Educ.*, 2008-Ohio-1515, ¶ 29 (10th Dist.) (cleaned up). Civil assault requires intent— that is that the alleged tortfeasor must know "with substantial certainty that his or her act would bring about harmful or offensive contact." *Id.* (cleaned up). Civil battery, on the other hand, involves more than just an offer or attempt to touch another. Battery requires an actual harmful or offensive contact by another who intends to cause that harmful or offensive contact. *Gerber v. Veltri*, 203 F. Supp. 3d 846, 851 (N.D. Ohio 2016).

The parents have plausibly alleged that Hopkins committed both assault and battery. Start with battery. The parents allege that Hopkins violated Ohio Revised Code § 2907.01(B), which means he (1) actually touched his students in an erogenous zone (2) for the purpose of sexual gratification. They further allege that Hopkins engaged in conduct "including but not limited to" hugging, kissing, and touching the

Child Victim, as well as setting her on his lap. (Doc. 34, #212). Touching a school-aged child in an erogenous for the purpose of sexual gratification is highly offensive to a reasonable person, as is the specific conduct alleged in the Complaint. Furthermore, because the parents allege (and a jury has found) that Hopkins touched children in his classes, a group that includes Child Victim, for a particular purpose (sexual gratification), by definition the touching must have been intentional. That gives rise to a reasonable inference that the alleged touching of Child Victim was likewise for that same purpose. That suffices to make a battery claim plausible.

Proving battery typically proves assault as well. But to the extent that a creative mind could come up with scenarios where the Child Victim was not put in apprehension of contact but was nevertheless offensively touched by Hopkins (say, using the element of surprise), the Court must draw reasonable inferences in favor of the parents. The Court infers that if Hopkins touched the Child Victim in erogenous zones, as alleged, he plausibly put her in reasonable apprehension of that contact—thus plausibly committing civil assault. And once again, the determination in the criminal matter that such contacts occurred in class and on school time, again suffices to make Child Victim's assault claim—predicated on in-class touching—plausible.

Hopkins contends that the parents offer only legal conclusions and fail to detail how the hugging, kissing, and lap sitting occurred. (Doc. 37, #249–50). But for the above reasons, the Court finds the allegations that Hopkins touched, kissed, or hugged the Child Victim are sufficient to "reasonably infer" that he committed assault and battery. Plus, the Complaint incorporated its prior allegations when

12

pleading the assault and battery claims, including that Hopkins engaged in "sexual contact" with his students under Ohio Revised Code § 2907.01(B). (Doc. 34, #204, 212). And for the reasons above, given the jury verdict in the related criminal matter, that allegation is sufficient to plausibly make out claims for civil assault and battery.

Because the parents have plausibly alleged civil assault and battery claims against Hopkins, the Court will allow those claims to go forward.

## C.    Civil Penalties for Criminal Conviction

The parents bring a claim under Ohio Revised Code § 2307.60(A)(1) which allows "[a]nyone injured in person or property by a criminal act … [to] recover full damages in [] a civil action." They assert that Hopkins is liable for his gross sexual imposition. (Doc. 34, #213–14). Hopkins claims that this claim is time barred, or alternatively is premature. (Doc. 37, #257; Doc. 41, #306–07). He is wrong on both counts.

Ohio Revised Code § 2305.11, a statute which provides limitation periods for a variety of common law claims, states, "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued." Hopkins argues that § 2307.60, the statute creating a cause of action for those injured by a criminal act, is a penalty statute within the meaning of § 2305.11. (Doc. 37, #257). And Ohio courts have consistently held that is is so, finding that claims under § 2307.60 are subject to a one-year limitation period. *Marquardt v. Carlton*, No. 1:18-cv-333, 2019 WL 1491966, at *2 (N.D. Ohio Apr. 2, 2019) (collecting cases).

13

But here, a separate, more specific provision relating to childhood sex abuse claims supersedes the one-year limitation provision. Ohio Revised Code § 2305.111(C)(1) states, "an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse[] shall be brought within twelve years after the cause of action accrues." Lest any doubt arise whether Hopkins's conduct qualifies as "childhood sexual abuse," the statute expressly provides that a violation of Ohio Revised Code § 2907.05 (the statutory provision under which Hopkins was convicted of gross sexual imposition) constitutes "childhood sexual abuse" if the offender is a teacher employed by a school and his victims are enrolled in that school. Ohio Rev. Code § 2305.111(A)(1)(b). So the parents' claims (on behalf of their minor child) are subject to a twelve-year limitation period, and thus are timely. (*See* Doc. 34, #205 (Hopkins indicted in June 2019); Doc. 1 (claim filed September 2021)).

Trying a different tack, Hopkins alternatively argues that, even if the twelve-year limitation period under § 2305.111 applies, subparagraph (C)(3) of that provision renders the claim premature. Subparagraph (C)(3) states that "[f]or purposes of this section, … a cause of action for a claim resulting from childhood sexual abuse[] accrues upon the date on which the victim reaches the age of majority." Ohio Rev. Code § 2305.111(C)(3). Relying on this language, Hopkins argues that because the Child Victim is still a minor, her claim has not accrued and is therefore premature. (Doc. 41, #306–07 (citing *Accrue*, BLACK'S LAW DICTIONARY (11th ed. 2019)). That argument has some textual plausibility. "Accrual" typically refers to the

14

time at which a right to proceed arises. But in cases involving statutes that provide for delayed accrual, Ohio courts routinely understand the word "accrual" to refer to the point in time when the statute of limitations period begins to run, not the earliest point at which a plaintiff can bring a claim. *See Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 275–76 (Ohio 2006) (collecting cases describing Ohio's injury-discovery rule interchangeably as the point at which the statute of limitations for a claim "begins to run" and when the claim "accrue[s]"). To be sure, a plaintiff cannot sue for an injury that has not yet occurred, and so cannot bring an "unaccrued" claim in that sense. But that does not mean that, where a specific legal rule operates to *delay* the accrual of a claim to some point after the injury occurs, a plaintiff is *barred* from bringing her claim before that artificial point in time.

The intermediate appellate court opinion in *Dobrovich v. Kaiser Permanente*, 2005-Ohio-2444 (8th Dist.), illustrates the point. That case involved a medical malpractice claim. *Id.* at ¶ 2. Ohio's accrual rule for such claims provides that a claim accrues at the *later of* the time when (1) the plaintiff discovers his injury, or (2) the patient-physician relationship ends. *Id.* at ¶ 9. The plaintiff in that case sued more than a year after he discovered his injury but before the patient-physician relationship ended, meaning the claim had not accrued. *Id.* at ¶¶ 2–3, 12. In response to the physician's argument that the claim was time barred, the Ohio court of appeals held that the claim had not yet even accrued, because the patient-physician relationship still continued. *Id.* at ¶ 12. The court did not suggest that this meant the plaintiff could not proceed with his claim, but rather only that the statute of

15

limitations on that claim had not yet begun to run. *Id*. In other words, the statute providing for delayed accrual after the injury (at the time the relationship terminated) did not prevent suit in the intervening time between the injury and that termination. And that makes sense. Forcing a plaintiff to wait some lengthy period of time to bring suit (e.g., until the physician-patient relationship ends as to malpractice claims) could give rise to separate constitutional concerns. For example, the Open Courts Amendment, Ohio Const., Art. I, Sect. 16, provides that "every person, for an injury done him … shall have justice administered without denial or delay." Forcing a plaintiff to wait years after suffering an injury recognized by Ohio law—the result that Hopkins seeks here—would be hard to square with that Ohio constitutional demand.

In sum, the parents' claim on behalf of Child Victim is timely under Ohio Revised Code § 2307.60. True, the claim has not "accrue[d]" under § 2305.111(C)(3), but that means only that the statute of limitations has not yet begun to run, not that the claim cannot yet be asserted. Accordingly, the Court will allow this claim to go forward.

### D.    Intentional Infliction of Emotional Distress

To allege a claim for intentional infliction of emotional distress, the parents must allege:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious

16

mental anguish of a nature no reasonable person could be expected to
endure.

*Marconi v. Savage*, 2013-Ohio-3805, ¶ 28 (8th Dist.).

The parents have plausibly alleged that Hopkins intentionally caused
emotional distress to his students, including Child Victim. First, it is obvious that
sexually molesting school-aged girls is beyond any bounds of decency. Society views
this conduct as deplorable, which is why it is a crime. Second, any reasonable person
should know that sexually molesting children would cause them extreme mental
anguish. The Court finds that Hopkins plausibly knew or should have known his
actions would have caused emotional distress. Third, the parents allege that Child
Victim suffered severe emotional distress as a result of Hopkins's conduct and the
Court finds that sexual molestation could plausibly cause such distress.

Hopkins counters that the Complaint fails to allege his intent. (Doc. 37, #252–
53). But the Court finds that the parents' invocation of Ohio Revised Code
§ 2907.01(B), coupled with the jury verdict that Hopkins' conduct falls within that
statutory definition, suffices to show intent. Hopkins' conviction demonstrates that a
jury of his peers found, beyond a reasonable doubt, that he touched his students'
erogenous zones "for the purpose of sexually arousing or gratifying either person."
Inherent in the incorporation of this provision is the allegation that Hopkins's
conduct was intentional. One cannot do something "unintentionally" and yet also
"purposefully." And because the parents have plausibly alleged that Hopkins touched
the students intentionally, the Court reasonably infers that he knew or should have
known his conduct would cause severe emotional distress.

17

Because the parents have plausibly alleged an intentional infliction of emotional distress claim, the Court will allow this claim to go forward.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Hopkins's motion to dismiss (Doc. 37).

**SO ORDERED.**

January 31, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

18